UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TARANDA CARSON,

    Plaintiff,

Case No. 1:23-cv-771

Hon. Paul L. Maloney

v.

UNKNOWN DOBE,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Taranda Carson is a prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff filed this lawsuit against defendant unknown Dobe (later identified as Corrections Officer (CO) Paul Dobe) pursuant to 28 U.S.C. 1983. This matter is now before the Court on defendant's motion for summary judgment (ECF No. 29). Plaintiff did not oppose the motion.

**I.**  **Plaintiff's complaint**

Plaintiff claims that CO Dobe retaliated against him. The alleged incidents occurred at the MDOC's Brooks Correctional Facility (LRF). Compl. (ECF No. 1, PageID.2). Plaintiff begins with reciting a conversation which allegedly occurred on March 28, 2022 (in his words):

> 1) On or around March 28, 2022, Prisoner Carson, who shall be referred to hereinafter as "Plaintiff-Carason. Was stopped by Correctional Officer Unknown Dobe, who shall be referred to hereinafter as "Defendant-Dobe".
>
> 2) Defendant Dobe stated, "Your name is ringing around here as a guy, who can get things out of the kitchen."

    3) Plaintiff Carson, stated, "Your name is ringing around here as a guy, who likes to harass inmates", "something like racial profiling."

    4) Defendant Dobe, replied, "While I hope I can live up to my reputation."

Compl. at PageID.2.

    On March 30, 2022, CO Dobe performed "what appeared to be a routine cell search" of plaintiff's cell. PageID.3. After the search, plaintiff found that Dobe had destroyed his personal property "including legal materials, family photos, and other personal property". *Id*. Plaintiff asked Dobe why he destroyed plaintiff's property. *Id*. Dobe allegedly said, "I can do whatever I want because LRF administration allows it, but wants me to do it as well." *Id*. Plaintiff told Dobe that no policy directive authorized him to destroy prisoner property. *Id*. Dobe "made a jumping movement" toward plaintiff. *Id*. Plaintiff filed a grievance on that day. PageID.4.

    A few weeks later, on April 17, 2022, CO Dobe wrote plaintiff "a false misconduct" for "Destruction or Misuse of Property." *Id*. Dobe allegedly told plaintiff, "See I can write destruction complaints too . . . But my complaints carry more weight do you hear me boy." *Id*. Plaintiff perceived this statement as a threat. *Id*. Plaintiff was in fear of Dobe and "wrote a kite to his psychologist requesting treatment." *Id*.

    Plaintiff further alleged (in his words):

25) Plaintiff claims being in fear of Defendant Dobe's actions, Plaintiff again wrote another grievance against Defendant Dobe. Which was rejected as non-grievable, [See Grievance Rejection Letter Dated April 25, 2022 under Appendix ( C )] .

26) Plaintiff having suffered a lost of property. Requested a property reimbursement form. Which was assigned a property clam identifier number: LRF-22-04-0020-19C. [See DTMB form Dated April 26, 2022 under Appendix (a) ] . However this Plaintiff was not reimbursed for the lost or damage property caused by Defendant Dobe's illegal conduct.

2

PageID.5. Plaintiff alleged CO Dobe retaliated against him in violation of the First Amendment. *Id*. Plaintiff seeks compensatory and punitive damages. PageID.6.

## II.   Defendant's motion for summary judgment

### A.   Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

3

Plaintiff did not file a responsive brief as required by W.D. Mich. LCivR 7.2(c) (stating that "any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials"). "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

Here, plaintiff included a "verification" at the end of his complaint pursuant to 28 U.S.C. § 1746, declaring "under the penalty of perjury" that the statements in the complaint were "true and correct". PageID.6. The Sixth Circuit has stated that such allegations "have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment." *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (internal quotation marks omitted). While this is not a response as required under W.D. Mich. LCivR 7.1(c), the Court cannot ignore the facts set forth in the verified complaint.

### B.     First Amendment retaliation claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*,

4

Ohio, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotation marks and brackets omitted). To prove a First Amendment retaliation claim, a plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

1. **Protected conduct**

CO Dobe contends that the alleged conversation on March 28, 2022 was not protected conduct. In fact, Dobe contends that the alleged conversation did not occur and points out that MDOC timecard records demonstrate that he did not work on that date. *See* Timecard (ECF No. 30-4); Dobe Affidavit (ECF No. 30-5, PageID.155 (I never had a conversation with inmate Carson on March 28, 2022; I was not even working that day."). However, at this stage of the proceeding, the Court will view the evidence in favor of the nonmoving party (plaintiff).[1]

Even if the conversation occurred, plaintiff's derogatory statement – that Dobe harasses inmates – is not protected conduct. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir.

---

[1] The MDOC records present a serious issue for the Court. If CO Dobe did not work on March 28, 2022, and the alleged conversation did not occur, then plaintiff made false allegations to the Court "under the penalty of perjury".

2008) (noting that words, actions, or other behavior which is intended to harass, degrade, or cause alarm in a prison official is considered insolent behavior, not protected conduct).

This leaves plaintiff's March 30, 2022 grievance as the only potential source of protected conduct. Indeed, at his deposition, plaintiff identified the grievance as the conduct protected by the First Amendment. *See* Carson Dep. (ECF No. 30-8, PageID.179-180). The Grievance at issue is LRF-20-22-0305-117I ("305") (ECF No. 30-7), in which plaintiff complained that CO Dobe engaged in the "destruction of grievants cell including mishandling and destroying legal materials" between 8:25 and 9:20 a.m. and that CO Dobe "attempted to assault" plaintiff when plaintiff tried to resolve the grievance that day (PageID.171). The grievance was denied because there was no evidence that the alleged incident occurred. The investigation stated:

> Baldwin Unit cameras were reviewed. There is no video footage of Officer Dobe entering cell B-74 between the hours of 0825 and 0920 as listed in this grievance. Further, there is no video footage of any interaction on the Unit Based between Officer Dobe and the grievant between the hours of 0830 and 0935 as listed in the grievance. This grievance is denied.

PageID.173. CO Dobe later stated in an email from April 24, 2022, that he did not assault plaintiff and "I don't even think he was in the unit when I shook the cell down." PageID.172.

> Nonetheless, I do remember the B74 top bunk had his cable cord running down from the wall to his tv top bunk. I had to uncable the cable so I could get to the locker on the other side to shake it down. After my shakedown I did not plug in the cable. I just let [sic] the cell. There was no destruction of property.

*Id*.

"An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). "This right is protected, however, only if the grievances are not frivolous." *Id*. Stated another way, an inmate has a right to file "non-frivolous" grievances against prison officials. *Maben v. Thelen*,

6

887 F.3d 252, 265 (6th Cir. 2018). "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or lawsuit and then claiming that everything that happens to him is retaliatory." *Spies v. Voinovich*, 48 Fed. Appx. 520, 525 (6th Cir. 2002).

Here, defendant contends that the grievance was not protected conduct because it was frivolous, *i.e.*, the grievance involved a *de minimis* issue. See Defendant's Brief (ECF No. 30, PageID.132-133). As the Sixth Circuit explained,

> Some cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*. *Ziegler v. State of Michigan*, 90 Fed.Appx. 808, 810 (6th Cir. 2004) (finding a grievance frivolous when the prisoner complained that the prison officer should "not be able to conduct a non-invasive pat-down search" of her); *White–Bey v. Griggs*, 43 Fed.Appx. 792, 794 (6th Cir. 2002) (finding grievances that "concerned being required to use a typewriter rather than a computer, and being required to sit quietly in defendant's office after being told again that there was no computer available for him to use" to be frivolous and not to "rise to the level of protected conduct"); *Scott v. Kilchermann*, 230 F.3d 1359, at *1-2 (6th Cir. 2000) (finding a grievance frivolous when the inmate complained that he had been subject to verbal abuse); *Thaddeus-X v. Love*, 215 F.3d 1327, at *2-3 (6th Cir. 2000) (finding a prisoner's threat to file a grievance against an officer for "eating waffles at a prison guard desk," which was against prison policy, "patently frivolous as the defendant's conduct had no adverse impact on [the prisoner]").

*Maben*, 887 F.3d at 264-65.

Based on this record, the Court concludes that Grievance 305 was neither *de minimis* nor frivolous. While the investigation indicates that CO Dobe did not perform a shake down, Dobe's later email indicates that he did shakedown the cell. Accordingly, the Court views Grievance 305 as protected conduct for purposes of plaintiff's retaliation claim.

7

### 2. Adverse action

Defendant contends that plaintiff did not suffer an adverse action.

> The term 'adverse action' arose in the employment context and has traditionally referred to actions such as 'discharge, demotions, refusal to [hire], nonrenewal of contracts, and failure to promote.'" *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir.2010) (quoting *Thaddeus-X*, 175 F.3d at 396). In the First Amendment context, however, we have held that "any action that would deter a person of ordinary firmness from exercising protected conduct will [constitute a sufficient adverse action], which may include harassment or publicizing facts damaging to a person's reputation." *Id*. Whether an alleged adverse action is sufficient to deter a person of ordinary firmness is generally a question of fact. *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). Nevertheless, when a plaintiff's alleged adverse action is "inconsequential," resulting in nothing more than a "de minimis injury," the claim is properly dismissed as a matter of law. *Id*. at 603, 606. Indeed, it "trivialize[s] the First Amendment to allow plaintiffs to bring . . . claims for any adverse action[,] no matter how minor." *Id*. at 603 (internal quotation marks and citation omitted) (emphasis in original).

*Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583-84 (6th Cir. 2012).

Plaintiff's retaliation claim is based on a misconduct ticket dated April 17, 2022. Plaintiff was charged with destruction or misuse of property, *i.e.*, CO Dobe "found paper in [plaintiff's] the door mechanism making the door unable to lock" and took a picture of the blocked mechanism. Misconduct (ECF No. 30-9). However, the misconduct ticket was dismissed because the "[t]icket was not written right", *i.e.*, "misconduct was written before the violation date". PageID.187. The hearing report states that the hearing date was April 22, 2022 and that plaintiff was found not guilty. *Id*. However, the hearing report does not indicate that plaintiff was present or that any evidence was heard. *Id*. In addition, there is no indication that plaintiff was interviewed for the ticket before the hearing. *Id*. In his affidavit, CO Dobe stated that the misconduct ticket "was dismissed because I inadvertently filled out the date wrong on the form and I never reissued the ticket after it was dismissed." Dobe Aff. (ECF No. 30-5, PageID.156).

At his deposition, plaintiff testified that the MDOC dismissed the ticket. Carson Dep. (ECF No. 30-8, PageID.181). While plaintiff stated that he showed up for a hearing on the ticket, he did not recall the date, the interview process, or why they dismissed the ticket. PageID.181-182. Plaintiff acknowledged that he did not have any sanctions as a result of the ticket. PageID.182.

Viewing the evidence in the light most favorable to plaintiff, the adverse action consisted of plaintiff appearing for a hearing to see the misconduct ticket dismissed. Plaintiff did not receive any sanctions and did not recall anything about the proceedings. Under these circumstances, the adverse action was *de minimis*. *See Wurzelbacher*, 675 F.3d at 583-84; *Bell*, 308 F.3d at 603, 606. Accordingly, plaintiff's claim did not rise to the level of a First Amendment violation.

### 3. Causation

Finally, plaintiff has not established causation. To satisfy the causal connection requirement, the plaintiff must show that the defendant's retaliatory motive was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves*, 587 U.S. at 399. Conclusory allegations of retaliatory motive are insufficient. *See Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir. 2004). Instead, plaintiff must, at a minimum, allege a chronology of events from which retaliation can plausibly be inferred. *See Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) ("temporal proximity alone may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive") (internal quotation marks omitted). "Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence

9

of protected activity, the defendant is entitled to prevail on summary judgment." *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001), citing *Thaddeus-X*, 175 F.3d at 399.

As discussed, there was no adverse action taken against plaintiff which rose to the level of a federal constitutional violation. Even if plaintiff had shown an adverse action related to the misconduct ticket, defendant presented evidence that he would have taken the same action against plaintiff absent a retaliatory motive.

On April 17, 2022, CO Dobe wrote plaintiff a Class II Misconduct ticket for destruction or misuse of property because there was paper in his cell door which prevented it from locking and plaintiff did not have authorization to block the door lock. *See* Misconduct Ticket at PageID.185. Dobe took a picture showing the paper stuffed in the door of cell 74 where plaintiff was housed. *See* Picture (ECF No. 30-9, PageID.186); Plaintiff's lock history (ECF No. 30-2). Dobe stated in his affidavit that, "I wrote [plaintiff] a Class II Misconduct ticket for putting paper in his door to prevent it from locking." PageID.155. In short, Dobe had an appropriate reason for writing the misconduct report.

### 4. Conclusion

For all of these reasons, defendant's unopposed motion for summary judgment should be granted.

### C. Qualified Immunity

Defendant also seeks summary judgment on the affirmative defense of qualified immunity. Under this defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

The qualified-immunity inquiry involves two questions: whether the defendant violated a constitutional right and whether that right was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "These questions may be answered in any order; if either one is answered in the negative, then qualified immunity protects the official from civil damages." *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016). "On summary judgment, the court must analyze these questions after construing the facts in the light most favorable to the party asserting the injury and drawing all reasonable inferences in that party's favor." *Id*. "When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

CO Dobe's qualified immunity claim is essentially a re-statement of his motion for summary judgment, *i.e.*, he is entitled to qualified immunity because there was no federal constitutional violation. *See* Defendant's Brief (ECF No. 30, PageID.139). As discussed, *supra*, plaintiff failed to establish a First Amendment retaliation claim against Dobe. Accordingly, defendant should be granted summary judgment on this basis.[2]

---

[2] Defendant also contends that he is entitled to qualified immunity because "[i]t is not clearly established in the Sixth

### III. Recommendation

Accordingly, I respectfully recommend that defendant CO Dobe's motion for summary judgment (ECF No. 29) be **GRANTED** and that this case be **terminated**.

Dated: July 31, 2025                               /s/ Ray Kent
                                                   RAY KENT
                                                   United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

Circuit what does and does not constitute a frivolous grievance." *See* Defendant's Brief at PageID.139. The purpose of qualified immunity is to shield officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. Here, defendant does not explain how the Sixth Circuit's lack of a clear definition of a "frivolous grievance" provides him with qualified immunity for the alleged retaliatory conduct, *i.e.*, issuing plaintiff a misconduct ticket for stuffing paper in the cell door mechanism.